IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
GULFPORT DIVISION

| | |
|---|---|
| MARILYN DAVID | PLAINTIFF |
| VS. | CAUSE NO. |
| BIG JOHN'S ELECTRIC CO., INC.;<br>ALDERMAN BUILDING CO., INC.;<br>QUENTIN L. ALDERMAN, SR., and<br>TIMOTHY BAYSDEN | 1:22cv223 LG-BWR<br><br>DEFENDANTS |
| and | |
| THE UNITED STATES OF AMERICA, THE<br>DEPARTMENT OF THE NAVY, and NAVY<br>FACILITIES ENGINEERING COMMAND<br>MID ATLANTIC | NOMINAL DEFENDANTS |

**COMPLAINT IN THE NATURE OF INTERPLEADER
AND FOR OTHER RELIEF**

COMES NOW Plaintiff, Marilyn David, by and through the undersigned counsel, and pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22, files her Complaint in the Nature of Interpleader and for Other Relief against Defendants, Big John's Electric Co., Inc., Alderman Construction Co., Inc., Timothy Baysden, individually, Quentin L. Alderman, Sr., individually, and Nominal Defendants, the United States of America, on behalf of the Department of the Navy, Navy Facilities Engineering Command Mid-Atlantic, Nominal Defendants [hereinafter, Defendants and Nominal Defendants are referred to collectively as "Defendants"], and as the basis for her causes of action would show unto the Court the following:

PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Marilyn David ("Plaintiff" or "Ms. David"), is an adult resident citizen of Harrison County, MS.

2. Defendant, Big John's Electric Co., Inc. ("Big John's"), is a foreign corporation authorized and existing under the laws of the State of North Carolina and not licensed to conduct business in Mississippi. Its principal place of business is located at 1305 Halltown Road, Jacksonville, NC 28546-8705, Onslow County. Big John's may be served with process by and through its registered agent, Timothy L. Baysden, at 1305 Halltown Road, Jacksonville, NC 28546-8705, Onslow County.

3. Defendant, Alderman Building Co., Inc. ("Alderman Bldg Co."), is a foreign corporation authorized and existing under the laws of the State of North Carolina and not licensed to conduct business in Mississippi. Alderman may be served with process by and through its registered agent, Quentin L. Alderman, Sr., 3550 New Bern Highway, Jacksonville NC 28546, or any person authorized to accept same, at 3550 New Bern Highway, Jacksonville NC 28546.

4. Defendant, Timothy Baysden ("Baysden") is an adult resident citizen of the State of North Carolina and may be served with process at 419 Creedmoor Road, Jacksonville, NC 28546, Onslow County.

5. Defendant, Quentin L. Alderman, Sr. ("Alderman"), is an adult resident citizen of the State of North Carolina and may be served with process at 619 Independence Dr, Jacksonville, NC 28546.

6. Nominal Defendants, The United States of America, the Department of the Navy, and the Navy Facilities Engineering Command Mid Atlantic (collectively, "Nominal Defendants" or the "Navy") may be served in accordance with the provisions of 28 U.S.C. 2810, by service upon the United States Attorney for the District of North Carolina and on the assistant U.S. attorney of said district by service via certified mail to "United States Attorney, Attn: Civil Process Clerk, with a copy to the United States Attorney General, Department of Justice, Room B-103, 950 Pennsylvania Ave. NW, Washington, D.C. The Navy and Navy components are named only as Nominal Defendants in this action because they hold certain funds (i.e., an award for under the Equal Access to Justice Act (EAJA), *infra*, for recoverable attorney's fees) that are the subject of this dispute. Plaintiff alleges no claim for relief against the Navy other than for the Navy to interplead said funds into the registry of this Court.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties and subject matter and venue is proper herein because the parties are from different states and the amount in controversy exceeds $75,000.00.

8. In addition, the Court has federal question jurisdiction over the Department of the Navy under 28 U.S.C. Sec. 1331, the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412, and the Administrative Procedure Act, 5 U.S.C. Act Sec. 701, *et seq*.

9. Venue is proper pursuant to 28 U.S.C. § 1397.

## FACTS

10. Ms. David is an attorney authorized to practice law in this State as well as other jurisdictions. She concentrates her practice in the area of Federal and State government

contracting and holds an LL.M in Government Contracts and Procurement Law from George Washington University Law Center in Washington, D.C. Her clientele mainly consists of government contractors seeking representation in litigating the procurement and administration of Federal and State contracts for construction, supplies, and services, including, but not limited to, claims arising from prime-contracts and subcontracts for work provided to Federal and State Governments. Such claims and disputes are litigated in trials or trial-type hearings before Federal and State courts and specialized administrative boards.

11. In March of 2009, the Department of the Navy awarded co-Defendant, Alderman Bldg Co., a Federal prime-contract for renovations of the interior, repairs to building systems, and incidental work, on building M403 at Marine Corps Base Camp Lejeune, North Carolina (the "Project"). See Excerpt from Navy Contract, Exhibit 1, attached hereto.[1] The building was a large dormitory to be used as residential housing and/or training of enlisted military personnel stationed at that military facility. Alderman Bldg Co. subcontracted with Big John's to provide labor, equipment, materials, and supplies for the electrical work required by Project.

12. Although the Navy Contract provided a start date of June 1, 2009, due to delays solely caused by the Navy Alderman Bldg Co. could not begin work on the Project until February 9, 2010. Alderman Bldg Co. ultimately completed the work on February 15, 2011.

13. Big John's could not begin its subcontract work until February 17, 2010. Big John's

---

[1] For the sake of brevity, Plaintiff has attached the first 5 pages of the 1,381 page Prime Contract only, but can make the entire document available upon the Court's request.

completed its subcontract work on October 28, 2010.

14. Due to the delays, Big John's incurred damages for unabsorbed home-office overhead while it waited on stand-by to perform the work. On October 2, 2009 and March 20, 2010, respectively, Big John's submitted its claims for delay damages to Alderman Bldg. Co., to submit as a sponsored claim on Big John's behalf, to the Navy's Contracting Officer for payment. The Navy's Contracting Officer denied the sponsored claim.

15. Following the denial, Big John's and Alderman Bldg Co. hired Ms. David, effective January 6, 2012, to appeal the Navy's decision to the Armed Services Board of Contract Appeals (ASBCA), in Arlington, Virginia. (See Alderman Bldg. Co., ASBCA No. 58082 & No. 58082-EAJA, attached as Exhibits 3 & 4.) Although termed an "appeal," the procedure before the ASBCA involves a litigated trial-type hearing, including a complaint, answer, full discovery with depositions, motion practice, .calling of witnesses, motions for summary judgment, trial briefs, etc. See Rules of the ASBCA (14 Jul 2021), published at 48 CFR Chapter 2, Appendix A, Part 2, and Addendums I & II, https://www.asbca.mil/Rules/.

16. At the outset of the attorney-client relationship, Ms. David emailed her Fee Agreement for services to co-Defendants, Baysden, principal of Big John's Electric, and Alderman, principal of Alderman Bldg Co. The agreement is not signed by Defendants but as will be demonstrated in more detail below, the parties' course of conduct clearly evinces "bargained for" consideration and acquiescence by all parties to its terms. The parties agreed to a $200.00 hourly rate for Ms. David's attorney services, which included her attorney's fees and costs, and paralegal fees and costs to be paid by Alderman Bldg Co. and Big John's. The agreement is attached hereto as Exhibit 2. Big John's in fact paid

Page 5

Ms. David's fees at the $200.00 hourly rate from about January 2012 through about January 2014.

17. It took over ten (10) years to reach a final resolution on all issues vigorously litigated before the ASBCA. Below is a list of complex briefs and filings, showing that Ms. David was required to draft and file 13 technical briefs and submissions consisting of 300 single-spaced pages (not including exhibits) to the ASBCA in order to rebut Navy defenses and allegations against her clients, on this complicated construction case involving convoluted engineering engineering and project-scheduling analysis.

## ALDERMAN BLDG CO.'S COMPLEX FILINGS IN ASBCA 58082
## (CLAIM SPONSORED FOR BIG JOHN'S ELECTRIC CO.)

| | **Document** | **Date Filed** | **No. of Single-Spaced Pages** |
|---|---|---|---|
| 1 | Alderman's Complaint | Jun. 25, 2012 | 35 |
| 2 | Alderman's Opposition to Navy's Motion for Summary Judgment & Motion to Dismiss for Lack of Jurisdiction, addressing alleged release, certification, and jurisdictional issues | Nov. 5, 2012 | 30 |
| 3 | Alderman's Statement of Undisputed Material Facts, and Statement of Disputed Issues, addressing alleged release, certification, and jurisdictional issues | Nov. 5, 2012 | 12 |
| 4 | Alderman's Reply to Navy's Opposition to Alderman's (1) Cross-Motion for Partial Summary Judgment and (2) Request for Declaratory Ruling; and Supporting Memorandum; addressing alleged release, certification, and jurisdictional issues | Jan. 11, 2013 | 27 |
| 5 | Alderman's Motion for Partial Summary Judgment Regarding (1) Unabsorbed Overhead Under Alternative to Eichleay Formula and (2) Standby Labor Costs; and Supporting Memorandum | Aug. 13, 2013 | 32 |
| 6 | Alderman's Statement of Undisputed Material Facts | Aug. 13, 2013 | 27 |
| 7 | Alderman's (1) Opposition to Navy's Cross-Motion for Partial Summary Judgment; (2) Reply to Navy's Opposition to Alderman's Motion for Partial Summary Judgment Regarding Eichleay Alternative & Standby Costs; and (3) Supporting Memorandum | Oct. 30, 2013 | 181 |
| 8 | Alderman's Pre-Mediation Statement | Feb. 3, 2016 | 10 |
| 9 | Alderman's Initial Brief on the Merits | Nov. 23, 2016 | 241 |
| 10 | Alderman's Opposition to Navy's Motion in Limine to Exclude Dr. Seals' Expert Reports | Nov. 28, 2016 | 22 |
| 11 | Alderman's (1) Motion to Qualify Dr. Seals as an Expert and to Admit Dr. Seals' Expert Reports, and (2) Supplemental Grounds for Opposition to Navy's Motion in Limine | Dec. 14, 2016 | 29 |
| 12 | Alderman's Reply to Navy Brief Under Rule 11 | Mar. 2, 2017 | 10 |
| 13 | Alderman's Motion to Admit Business Records and Other Documents Attached to Dr. Seals' Three Expert Reports | Mar 28, 2017 | 24 |
| | **TOTAL:** | | **300** |

18. During the 10 years (from 2012 to 2022) it took to litigate the highly contested case before the ASBCA, Ms. David dutifully performed specialized legal services for Alderman Bldg Co. and Big John's. But, through January 14, 2014, Big John's had paid her only $42,200 (representing attorney's fees only) in furtherance of the parties' fee agreement. Thereafter, the parties orally agreed to defer further payments from Big John's until a time when Big John's could resume making payments.

19. Ms. David did an exceptional job for Big John's during the litigated case. The ASBCA issued a decision on the merits on May 21, 2020, in favor of Alderman Bldg Co. and Big John's Electric as prevailing parties. (See ASBCA No. 58082, Dec. May 21, 2020, attached as Exhibit 3.) The ASBCA awarded Alderman Bldg Co. and Big John's delay damages for unabsorbed home-office overhead, and, on or about Oct. 27, 2021, the Navy paid $42,378,48 (for the ASBCA judgment on the merits plus interest) to Big John's.

20. Thereafter, Ms. David prepared and on June 18, 2020 submitted a 188-page Application to the ASBCA for recoverable attorney's fees and costs under the Equal Access to Justice Act (EAJA). Ms. David submitted accurate, detailed invoices, sworn under affidavit, to the ASBCA, that $126,534.33 was the amount of attorney's and paralegal fees and costs owed by Alderman Bldg Co./Big John's to Ms. David (under the parties' separate attorney-client representation agreement, which is independent from recoverable attorney's fees under the EAJA), and showed that this sum did not include any sums owed by Big John's to engineering expert Dr. Roger Seals and to attorney, Russell S. Gill, under separate contracts with those individuals.

21. The Navy contested the EAJA Application, requiring Ms. David to prepare and submit a

Page 8

73-page rebuttal on August 7, 2020. On April 28, 2022, the ASBCA issued a decision (ASBCA-EAJA No. 58082, attached as Exhibit 4), finding no fault with Ms. David's documentation and computation of the $126.534.33 in attorney fees under the independent attorney-client representation agreement between Big John's Electric and Ms. David. Also in the decision, the ASBCA applied its own rules for determining the separate question of recoverable attorney's fees under the EAJA, which it awarded in the amount of $57,676.06 (hereinafter "the EAJA Award").

22. By this point in time, Big John's had made an additional payment of $9,346.09, which was for paralegal fees. This brought all payments made attorney's and paralegal fees and costs to $53,525.97, against a total amount due of $126.534.33. Thus, the balance owed to Ms. David was, and still is, $73,008.36, plus 10% interest from the invoice date of October 18, 2017, which adds up to a total amount owed of $109,512.54.

23. Defendants conspired with each other to defraud Ms. David from being paid the $73,008.36 balance owed to her, and to keep the EAJA Award of recoverable attorney fees for their own use instead of applying it toward Ms. David's attorney's fees balance. Timothy Baysden, speaking on behalf of himself and the other Defendants, conveyed to Ms. David several times during July 2022 that he did not intend to use the EAJA Award of $57,676.06 to pay toward the $73,008.36 balance of attorney's fees, and that Defendants instead intended to keep it for their own benefit. For example, Baysden sent Ms. David an email on July 20, 2022, stating he intended to pay only $29,199.17 of the $57,676.06 EAJA Award toward her attorney's fees when he received payment of the EAJA Award. Then he sent another email on July 21, 2022, where he reduced the amount he intended to pay to a mere $12,464.87 of the $73,008.36 due.

Page 9

24. In furtherance of Defendants' conspiracy, they committed the acts of extortion and, apparently, also abuse of process. For example, on July 29, 2022, Baysden stated false allegations of malpractice and unethical conduct against Ms. David, and indicated he would file a Bar complaint against her based upon his false allegations if she did not accept $19,403.46 as final payment on her attorney's fees balance of $73,008.36. He wrote in an email on that date: "This leads me to a past attorney that handled a case with the department of labor. His invoices was [*sic*]not in line with what he had provided, that lead me to file a claim with the Bar. This process was rewarding and the matter got resolved. I hope that this matter can get resolved without going this path, so both parties can move forward. Advise if your going to accept the $19,403.46 as final payment, or it not, further action will be taken." Ms. David did not accept said amount as final payment.

25. In furtherance of Defendants' conspiracy, Baysden had earlier, in approximately 2021, made a threat and an admission against interest (which serves to corroborate his July 21, 2022 threat) to Ms. David. He made the earlier threat and admission during discussions wherein Ms. David and he had confirmed their agreement that he would pay in full the balance of her attorney's fees immediately after the ASBCA issued its EAJA Award Decision. (Later, Baysden claimed he could not pay her at that time, and she agreed he could pay her the full balance owed when the EAJA Award was paid. During those earlier discussions, Baysden orally bragged, using words to the effect that: "I have a certain method I use to deal with attorneys to get out of paying for all the work they bill me for."

26. In furtherance of Defendants' conspiracy, Baysden acted together with Quentin Alderman, who, on August 14, 2022 executed a Revocation of Limited Power of Attorney (attached as Exhibit 5), not notarized by a notary, but witnessed by Michael Dougherty. Dougherty,

Page 10

a high-level employee of Timothy Baysden and Big John's, and apparently second-in-command at Big John's, is therefore not an impartial witness. The Revocation appears to be an act taken in concert by the four Defendants and Baysden's interested-party-employee Michael Dougherty. The Revocation revoked a prior Limited Power of Attorney to Marilyn H. David, as Counsel for Alderman Bldg. Co., to receive and disburse any EAJA Award and payment on ASBCA No. 58082, thus revoking Ms. David's arrangement with Quentin Alderman to receive and apply the $57,676.06 EAJA Award toward the $73,008.36 balance of her attorney's fees. The only reason for Defendants to do this would be so that they could convert the $57,676.06 EAJA Award to their own use instead of lawfully using it to pay the balance of Ms. David's sworn and submitted attorney's fees.

27. In furtherance of Defendants' conspiracy, they acted together with Quentin Alderman, who, on August 14, 2022 executed a Limited Power of Attorney (attached as Exhibit 6), again not notarized by a notary, but witnessed by Michael Dougherty, Baysden's employee. The Limited Power of Attorney appointed Timothy Baysden instead of Ms. David as Quentin Alderman's Attorney-in-Fact to receive and disburse the $57,676.06 EAJA Award. The only reason for Defendants to replace Ms. David with Timothy Baysden like this would be so that Baysden himself, or Defendants, could convert the $57,676.06 EAJA Award to his or Defendants' own use instead of lawfully using it to pay the balance of Ms. David's attorney's fees.

28. In furtherance of Defendants' conspiracy, several times during 2019 through 2022 they made false allegations of corruption, collusion, and unethical behavior against Ms. David and an ASBCA administrative law judge, and also falsely claimed Ms. David had agreed

to lower her $200 hourly rate to $125. For example, on September 26, 2019, Baysden emailed Ms. David a letter accusing ASBCA Judge Younger of colluding with Ms. David to commit unethical and corrupt actions to harm Big John's financially in the litigation of Big John's claim sponsored by Alderman before the ASBCA (ASBCA No. 58082). Baysden's letter falsely alleged: "Review, research law, wow, I was paying for your experience, not to have to research law. Also paying for rescheduling due to your injures. This type of tactics has [*sic*] made me lose faith again in the system. Now on 9/25/19 I receive an email from you with a response from the clerk requesting closing arguments. This again after 1.5 years after final brief. This again will start the clock, with preparing, research law and another 20 hrs. of billing. I have come to the conclusion that the Judge is not ruling just to continue putting us in a position to absorb additional attorney fees."

29. On October 3, 2019, Ms. David wrote Baysden a letter, providing facts rebutting these and his many other false allegations against her. In her letter, she noted that beginning from the inception of his engaging her to represent him on ASBCA No. 58082, and confirmed several times subsequently, Baysden and she had agreed that the amount of any monetary judgment was less important to him, and secondary to his primary litigation goal. His primary litigation goal was to establish legal precedent he could use for his future pre-performance claims for unabsorbed home-office overhead under the Eichleay formula (where the Government issued no express "stand-by" order) against the many Federal installations where he routinely subcontracted to perform electrical construction work in his geographical vicinity. With the decision on the merits (ASBCA No. 58082, May 21, 2020, attached as Exhibit 3), where Alderman and Big John's prevailed upon that issue, Ms. David met this litigation goal in its entirety.

30. In furtherance of Defendants' conspiracy, in an email on September 19, 2019, Baysden defamed and made false allegations of malpractice, corruption, unethical behavior, dishonesty, and false billing against Defendants' own expert witness, Dr. Roger Seals, whose excellent engineering reports were responsible for making Alderman Bldg Co. and Big John's the "prevailing parties" on the case before the ASBCA. As prevailing parties, Defendants achieved the litigation goal (of setting precedent that Big John's Electric could use for any future claims for pre-performance delays under the Eichleay formula even where no express standby order was issued by the Federal Government). Big John's Electric also received payment of $42,378.48 in a judgment on the merits and interest. Both results were due in no small part to Dr. Seals' outstanding engineering work, expert reports, and deposition testimony. Yet, to further their conspiracy, Defendants still threatened and defamed Dr. Seals, the esteemed Professor Emeritis, former head of the Civil Engineering Department at Louisiana State University, and well-known published author and researcher.

31. In furtherance of Defendants' conspiracy, they also defamed Ms. David on September 19, 2019, and made false allegations of malpractice, corruption, and unethical behavior against her, writing in an email to Dr. Seals the following false statement: "Marilyn [David, attorney] persuaded us to pursue unabsorbed field overhead, which is very hard to prove. Another attorney tactic to increase billable hours."

32. On August 19, 2022, the Navy submitted a Notice to the ASBCA attaching Quentin Alderman's revocation of his Power of Attorney to Ms. David, and his grant of Power of Attorney to Baysden, to receive and disburse the $57,676.06 EAJA Award. The Notice stated that the Navy is in possession of the EAJA funds at the present time but intends to pay the EAJA Award to Baysden prior to September 30, 2022.

## COUNT ONE - INTERPLEADER

33. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if fully set forth in words and figures herein.

34. In accordance with 28 U.S.C. §1335, Plaintiff claims an interest in the above-described funds currently held by Nominal Defendants, specifically, the Navy, and hereby requests an Order from this Court directing the Navy to interplead said funds into the registry of this Court, and thereafter dismissing the Navy from this litigation.

## COUNT TWO - BREACH OF CONTRACT

35. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if fully set forth in words and figures herein.

36. Alderman/Big John's breached the Fee Agreement attached hereto as Exhibit 2 by failing to pay Plaintiff in full after the ASBCA Decision issuing the EAJA Award (ASBCA-EAJA No. 58082, Exhibit 3). Due to this breach, Plaintiff has been damaged in the amount of $73,008.36, plus 10% interest from the invoice date of October 18, 2017, which adds up to a total amount owed of $109,512.54.

## COUNT THREE - BAD FAITH BREACH OF CONTRACT

37. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if fully set forth in words and figures herein.

38. Alderman Bldg Co. and Big John's maliciously and intentionally breached subject Fee Agreement by their failure to pay for services rendered. When Big John's stopped paying Ms. David in January of 2014 - based on the oral agreement that Big John's Electric would pay Ms. David's attorney's fees in full after the EAJA Award was issued - its clear intention was to stop paying Ms. David altogether for her legal services in ASBCA No.

58082 & ASBCA-EAJA No. 58082. This was evidenced by Big John's intimidation tactics after the final decision (ASBCA-EAJA No. 58082) was issued on April 28, 2022.

39. Due to this malicious and willful conduct, Plaintiff, in addition to her actual damages, is entitled to punitive damages to be determined by the trier-of-fact at a trial of this cause, as well as reimbursement of her reasonable costs and attorney's fees in having to bring this lawsuit to recover damages owed.

## COUNT FOUR -- QUANTUM MERUIT/QUASI-CONTRACT CLAIM

40. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if fully set forth in words and figures herein.

41. In the alternative, Ms. David and Big John's entered into an equitable, quasi-contractual relationship for the services rendered in the underlying action. In equity, your Plaintiff is due from Big John's the $73,008.36 balance of attorney's fees for her legal work in the ASBCA proceeding detailed above, plus 10% interest per annum from the invoice date of October 18, 2017, which adds up to a total amount owed of $109,512.54.

## COUNT FIVE -- CONSPIRACY TO DEFRAUD

42. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if fully set forth in words and figures herein.

43. As alleged in detail above, Defendants conspired together to defraud Plaintiff of, and otherwise convert to their own use, the EAJA Award. the statutory purpose of which is to pay toward attorney's fees. Due to this conduct, Plaintiff has been significantly damaged in an amount to be shown at the trial of this case.

## COUNT SIX -- TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

44. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if

fully set forth in words and figures herein.

45. A claim for tortious interference with business relations requires proof of the following four elements: (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted. *MBF Corp. v. Century Business Communications, Inc.*, 663 So.2d 595, 598 (Miss.1995), as cited in *PDN, Inc. v. Ivory Loring*, No. 2001-CA-01397-SCT (April 24, 2003).

46. In addition to the Fee Agreement (Exhibit 2) described herein, Quentin Alderman had the following business relationship with Ms. David prior to August 14, 2022: Quentin Alderman in 2020 had executed a limited power of attorney appointing Ms. David as his Attorney-in-Fact to receive and disburse the EAJA Award resulting from ASBCA-EAJA No. 58082. On August 14, 2022, Baysden caused, and conspired with, Quentin Alderman to revoke the power of attorney and to execute a new power of attorney to replace Ms. David with Baysden as Attorney-in-Fact for receiving and disbursing the EAJA Award. This revoked Ms. David's power to receive and apply the $57,676.06 EAJA Award toward its lawful purpose of partially paying the $73,008.36 balance of her sworn attorney's fees submitted to the ASBCA.

47. The only reason for Baysden to interfere like this in the business relationship between Quentin Alderman and Ms. David would be so that Baysden could convert the $57,676.06 EAJA Award either to his or to Defendants' own use, instead of lawfully using it to pay the balance of Ms. David's sworn and submitted attorney's fees.

48. At around the same time, in about July 2022, Baysden indicated to Ms. David in multiple communications that he did not intend to apply the EAJA Award to pay off the balance of her attorney's fees. This showed that his August 14, 2022 interference with the business relationship between Ms. David and Mr. Alderman was intentional and willful, and that Baysden's interference was calculated to harm Ms. David by causing her attorney's fees balance to go unpaid without any right or justifiable cause on Baysden's part (which constitutes malice) for doing so. Baysden's interference resulted in actual loss and damage to Ms. David, because she was not paid $57,676.06 toward her attorney's fees balance of $73,008.36.

### COUNT SEVEN-- VIOLATION OF ADMINISTRATIVE PROCEDURE ACT AND FEDERAL QUESTION

49. Plaintiff hereby re-adopts and incorporates by reference the preceding allegations as if fully set forth in words and figures herein.

50. By this Complaint, Plaintiff has placed the Navy on notice of Defendants' (a) conspiracy to defraud and extort, and actual commission of extortion and abuse of process, against Ms. David; and (b) conduct prejudicial to the administration of justice within the ASBCA and the Department of the Navy regarding Defendants' intended use and disbursement of the EAJA Award for a purpose other than paying the balance of Ms. David's attorney's fees.

51. Per the Navy's August 19, 2022 Notice to the ASBCA, the Navy is in possession of the EAJA funds at the present time but intends to pay the EAJA Award to Baysden prior to September 30, 2022. The Navy's Notice cites to *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) to justify paying the EAJA Award directly to Baysden (as Attorney-in-Fact for

Alderman Bldg Co., who is the litigant), although *Astrue* recognizes that an attorney (like Ms. David) may have a beneficial interest or contractual right in an EAJA Award when the litigant (like Big John's and Alderman Bldg Co.) has not paid the balance owed for attorney's fees.

52. In view of the unlawful and prejudicial conduct of Defendants identified in this Complaint, including Defendants' threats of abuse of process, and their intent to keep EAJA Award for their own benefit instead of applying it in accordance with its statutory purpose of paying attorney's fees, paying the EAJA Award directly to Baysden would adversely impact the administration of justice within the ASBCA and the Department of Navy. Paying the EAJA Award would under these circumstances would constitute improper behavior, procedures, policies, interpretations, and actions by Navy officials and employees, constituting a violation of the Administratiive Procedure Act, 5 U.S.C. Sec. 701, et seq.

53. These circumstances also create the federal question of whether a litigant's demonstrated conduct evidencing intent to thwart the statutory purpose behind an EAJA Award (such as Baysden and Alderman's demonstrated conduct and expressed intent to keep the EAJA Award for their own benefit instead of paying the balance of Ms. David's attorney's fees) conflicts with the interpretation that the *Astrue* case still requires the Navy to pay the EAJA Award directly to Baysden (as the litigant's representative) instead of to Ms. David.

54. Plaintiff demands that the Navy redirect payment of the EAJA Award to Ms. David instead of Baysden, or, in the alternative, interplead (under FRCP Rule 22) the $57,676.06 into the registry of this Court until the case at hand is decided.

WHEREFORE, PREMISES CONSIDERED, your Plaintiff respectfully requests from this Honorable Court the following:

    a.    An Order from this Court under Count I of the Complaint directing Nominal Defendant, The United States Navy, to interplead the EAJA Award into the registry of the Court for a determination of the parties respective interests in and to said Award.

    b.    A Judgment against Defendants (except for the Navy) under Count II of this Complaint, for breach of contract, in the amount of $73,008.36, plus 10% interest per annum from the invoice date of October 18, 2017, which adds up to a total amount owed of $109,512.54;

    c.    A Judgment against Defendants (except for the Navy) under Count III of this Complaint for bad faith breach of contract awarding her actual damages as well as punitive damages to be determined by a Jury;

    d.    In the alternative, a Judgment against Defendants (except for the Navy) under Count IV of this Complaint based on the equitable theory of quantum meruit or quasi-contract in the amount of $73,008.36, plus 10% interest per annum from the invoice date of October 18, 2017, which adds up to a total amount owed of $109,512.54;

    e.    A Judgment against the Defendants (except for the Navy) under Count V of this Complaint for conspiracy to defraud, awarding her actual damages as well as punitive damages to be determined by a Jury;

    f.    A Judgment against Defendants (except for the Navy) under Count VI of this Complaint, for tortious interference with business relations, in the amount of

$73,008.36, plus 10% interest per annum from the invoice date of October 18, 2017, which adds up to a total amount owed of $109,512.54;

g. An Order under Count VII, for violation of the Administrative Procedure Act and for federal question, that the Navy redirect payment of the EAJA Award to Ms. David instead of Baysden;

h. Plus Ms. David's reasonable costs and attorney's fees of 33.33% of the total sum due;

i. Plus post-judgment interest as allowed by law;

j. And for such other and further relief as may be just and proper in the premises.

This the 26th day of August, 2022.

BY: MARILYN DAVID, ESQ.

BY: BYRD & WISER

BY: _____
Russell S. Manning, MSB#102789
Attorney for Plaintiff
BYRD & WISER
145 Main Street (39530)
P.O. Box 1939
Biloxi, Mississippi 39533
Phone: (228) 432-8123
Fax: (228) 432-7029
Email: rsm@byrdwiser.com

S:\kim\rsm\clients\1 Russell's Clients\David-Marilyn\2022.0825 COMPLAINT.wpd

6 Exhibits Attached:

1. Excerpt, Prime Contract Between Alderman Bldg Co. and Navy
2. Fee Agreement
3. Decision, ASBCA No. 58082, May 21, 2020
4. Decision, ASBCA-EAJA No. 58082, April 28, 2022
5. Revocation of Power of Attorney to Marilyn H. David
6. Grant of Power of Attorney to Timothy Baysden